UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

_____

Elaine and Alfred Chamberlain )
    Plaintiffs )
)
v. ) CIVIL ACTION NO.
)
Bryan Stanley Construction, LLC, and )
Timothy Hutchins, Patricia Cooke and )
Samuel Avery House, LLC )
)
)
    Defendants )
)
_____

# PLAINTIFFS' COMPLAINT

## PARTIES

1. Plaintiffs, Elaine and Alfred Chamberlain ("Elaine," "Alfred" or "Plaintiffs"), have at all times relevant to this matter been residents of 139 Hollis Street, Groton, Massachusetts 01450.

2. Defendant, Bryan Stanley Construction, LLC ("Bryan Stanley Construction"), has at all times relevant to this matter been a limited liability corporation organized under the laws of the State of New Hampshire with a principal office address of 99 Pine Hill Road, Wolfeboro, New Hampshire 03894. At the time of the negligence alleged in this complaint and at all relevant times thereafter, the sole member of Bryan Stanley Construction was Bryan Stanley of Wolfeboro, New Hampshire. The primary business of Bryan Stanley Construction is to provide construction services to customers.

1

3. Defendant, Timothy Hutchins ("Hutchins") has at all times relevant to this matter been an individual with a residence address of 44 Pine Hill Road, Wolfeboro, New Hampshire 03894.

4. Defendant Samuel Avery House, LLC ("Samuel Avery House") has at all times relevant to this matter been a limited liability company organized under the laws of the State of New Hampshire having a principal business address of 126-130 South Main Street, Wolfeboro, New Hampshire 03894.  The sole member of Samuel Avery House is Peter Cooke ("Peter") having a residence address of 117 North Main Street, Wolfeboro, New Hampshire 03894.

5. Defendant Patricia Cooke ("Patricia") is an individual residing at 117 North Main Street, Wolfeboro, New Hampshire 03894 and is named as a defendant in her capacity as actual or apparent agent of Samuel Avery House and individually.

## JURISDICTION AND VENUE

6. Subject matter jurisdiction is based upon diversity of citizenship as provided in 28 U.S.C. § 1332 (a).  The amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Personal jurisdiction of these defendants in this matter exists as all defendants are residents of the State of New Hampshire and the negligence and injuries alleged occurred in Wolfeboro, New Hampshire.

8. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391 (b)(2) as the events, acts or omissions giving rise to this claim occurred in Wolfeboro, New Hampshire.

## FACTS

9. On or about August 9, 2020, Elaine was in Wolfeboro, New Hampshire visiting her sister, Patricia.  Patricia and her husband, Peter, own and operate an inn called Pickering House

        Inn ("the Inn"). At the time of Elaine's visit on August 9, 2020, defendant, Samuel Avery House, was in the process of renovating a building located adjacent to the Inn. The renovated structure was to be a restaurant known as the Pavilion. Elaine's visit occurred on a weekend and at the time of the visit, neither Bryan Stanley Construction nor Hutchins was on site.

10. Samuel Avery House, as owner of the building being renovated, controlled access to the building on the date of Elaine's visit. While Peter was the sole member of Samuel Avery House, Patricia is a designer in her own right and was intimately involved in the design and renovation to the Pavilion, regularly monitored the progress of the construction and assisted in the marketing of the planned restaurant. Patricia had access to the Pavilion while under construction and was the actual or apparent agent of Samuel Avery House with regard to the monitoring of the renovations and permitting access to the construction site.

11. Elaine is a trained artist. Patricia knew that Elaine had a keen interest in architecture and design as Elaine had spent many years renovating her own home in Groton, Massachusetts. Moreover, Elaine had assisted Patricia and Peter in designs incorporated into the Inn. From that experience, Elaine learned that Patricia was a driving force in the design aspect of the Inn and was aware that Patricia was filling a similar role with regard to renovation of the Pavilion.

12. As part of the renovation of the Pavilion, contractors had discovered certain beams thought to be "King's Wood." King's Wood was timber harvested in colonial times to signify timber designated for export to England, generally for use in shipbuilding for the Royal Navy. During the course of Elaine's visit, Patricia offered to show Elaine the

       renovation and the King's Wood which had been discovered in the course of the renovation.

13. Elaine would not have entered the Pavilion on her own and did so only upon the invitation of Patricia acting as the actual or apparent agent of Samuel Avery House or on her own.

14. Prior to escorting Elaine to the Pavilion, Patricia did not inspect or otherwise take steps to ensure that the rooms which she intended to show Elaine were safe and free of hazards. While Patricia was directing Elaine where to look to see the King's Wood in the Pavilion, Elaine fell through an unprotected and unmarked opening for a stairwell.

15. Samuel Avery House retained Bryan Stanley Construction as the general contractor for the renovation of the Pavilion. Bryan Stanley Construction retained Hutchins as a subcontractor for the project. On a date prior to August 9, 2020, Bryan Stanley Construction and Hutchins removed guards which had secured and protected the opening through which Elaine fell. The guards were removed even though Bryan Stanley Construction and Hutchins were aware that others, including, but not limited to, Patricia, had access to the building even when the contractors were not present.

16. The removal of the guards left an opening in the floor through which a person could foreseeably fall to the concrete floor below.

17. The removal of the opening guards was unreasonable and violated New Hampshire common law and applicable regulations pertaining to site safety at construction sites, including regulations promulgated by the State of New Hampshire and the Occupational Safety and Health Administration (OSHA).

18. Prior to Elaine's fall, Samuel Avery House knew or should have known, that Patricia and

others had access to the construction site during times when no contractors were on site and that she would on her own, or in the company of others, visit the site for a variety of purposes, including simply observing the process of construction.

19. Samuel Avery House took no reasonable steps: to restrict access to the Pavilion during construction, to regularly inspect the building for existing and potential hazards, to instruct Patricia to conduct inspections of her own prior to permitting third-parties not involved in the construction (such as Elaine) to enter the building, or to otherwise exercise reasonable care with respect to the entry of people into the building.

20. As a direct and proximate result of her fall, Elaine suffered fractures to her left femur and left humerus, among other injuries. Elaine has undergone multiple surgeries, suffered substantial physical and emotional pain, endured loss of enjoyment of life, been unable to work and has likely suffered a permanent loss of earning capacity. Elaine's medical care is ongoing. Medical bills in the hundreds of thousands of dollars have been incurred to date to treat Elaine's injuries. Elaine is likely to continue to incur damages for the foreseeable future and some or all of her injuries and damages are permanent.

## COUNT I

### (Negligence - Bryan Stanley Construction)

21. Each and every factual allegation in paragraphs 1 - 20 above is restated as if alleged herein.

22. On the date of Elaine's fall, Bryan Stanley Construction was the general contractor for the renovation of the Pavilion. In that capacity, Bryan Stanley Construction had a duty to maintain the construction site in a reasonable manner such that all people foreseeably on the site would be protected from unreasonable hazards associated with the renovation. At

a minimum, Bryan Stanley Construction had a duty to follow OSHA regulations, applicable regulations of the State of New Hampshire, and common-sense requiring that open holes in floors be protected by railings or coverings sufficient to prevent accidental falls through them. Bryan Stanley Construction knew or should have known prior to August 9, 2020 that Samuel Avery House agents, including, but not limited to Patricia or others, could and did, access the construction site and that it was necessary to act reasonably to protect them and others on the property. Bryan Stanley Construction, as the general contractor for the renovation, had the duty to itself provide rails, covers and warnings for all floor openings through which a person could foreseeably fall at the site, and the additional duty to reasonably supervise its subcontractors to ensure that the subcontractors did the same.

23. Bryan Stanley Construction breached the duties it owed by directing or permitting the floor opening through which Elaine fell to be left unguarded by rails, uncovered by a sufficient cover, and to remain open without warnings of any kind. In doing so, Bryan Stanley Construction breached applicable regulations adopted by OSHA and the New Hampshire Department of Labor pertaining to floor openings and also breached its common law duty of care to make the job site safe for foreseeable users, including Elaine.

24. As a direct and proximate result of Bryan Stanley's breach of duties as alleged, Elaine fell through the unprotected floor opening on August 9, 2020 sustaining the injuries and damages alleged.

## COUNT II

### (Negligence - Tim Hutchins)

25. Each and every factual allegation in paragraphs 1 - 24 above is restated as if alleged herein.

26. On the date of Elaine's fall, Hutchins was acting as subcontractor retained by Bryan Stanley Construction to assist in the renovation of the Pavilion. In that capacity, Hutchins had a duty to comply with all applicable OSHA regulations, applicable regulations of the State of New Hampshire, and common-sense requiring that open holes in floors at the site be protected by railings or coverings sufficient to prevent accidental falls through them. Hutchins knew or should have known prior to August 9, 2020 that Samuel Avery House agents, including but not limited to Patricia or others, could, and did, access the construction site and that it was necessary to act reasonably to protect them and others rightfully on the property. Hutchins, as a contractor for the Pavilion renovation, had the duty to himself provide rails, covers and warnings for all floor openings through which a person could foreseeably fall at the site.

27. Hutchins breached the duties owed by himself removing, or permitting the removal by others, of railings or coverings over the floor opening through which Elaine fell.

28. As a direct and proximate result of Hutchins' breach of duties as alleged, Elaine fell through the unprotected hole opening on August 9, 2020 sustaining the injuries and damages alleged.

## COUNT III

### (Negligence - Samuel Avery House)

29. Each and every factual allegation in paragraphs 1 - 28 above is restated as if alleged

herein.

30. Samuel Avery House owned the Pavilion which on the date of Elaine's injury was being renovated by Bryan Stanley Construction and Hutchins. Samuel Avery House has a single member, Peter Cooke. Peter resides a short distance from the Pavilion. Peter resides with Patricia.

31. While Peter was the sole member of Samuel Avery House, Patricia was intimately involved in the plans for renovation of the Pavilion and the plans for its ultimate use as a restaurant. Patricia was involved in both design aspects of the renovation and the periodic posting of photographs depicting the ongoing construction to the internet devoted to the Pavilion and Inn and which included references to the ongoing renovation of the Pavilion.

32. Further, Peter was aware that Patricia would regularly monitor the renovation and gain access to the construction site. Patricia was permitted by Samuel Avery House to access the construction site without limitation imposed by Samuel Avery House and Samuel Avery House knew that Patricia was, in fact, entering the construction site at times of her own choosing.

33. Samuel Avery House had the ability to restrict access to the construction site by Patricia and others, but it chose not to do so.

34. Having elected to permit Patricia access to the construction site and to not prohibit her from bringing other people such as Elaine onto the site, Samuel Avery House owed to Elaine the duty to ensure that the construction site was safe by reasonable inspections and that hazards such as openings in floors were reasonably addressed and made safe by installation of guards, floor coverings or warnings.

35. Samuel Avery House breached its duties of care as alleged by failing to reasonably restrict access to the construction site, by failing to conduct reasonable inspections of the job site to ensure it was free of unreasonable hazards, such as unguarded or uncovered floor openings, and that reasonable warnings of hazards were in place.

36. As a direct and proximate result of Samuel Avery House's negligence as alleged, Elaine suffered the fall, injuries and damages she has alleged.

## COUNT IV

### (Vicarious Liability - Samuel Avery House)

37. Each and every factual allegation in paragraphs 1 - 36 above is restated as if alleged herein.

38. At all times relevant to this matter, Patricia and Peter were both actively involved in the renovation of the Pavilion and monitored its progress by visiting the construction site on a regular basis.

39. While not a member of Samuel Avery House, Patricia was intimately involved in the design of the renovation either individually or acting through her design business, Wentworth Style, LLC.

40. Patricia assisted in the design of the renovation, regularly checked on the progress of it, had access to the job site with the permission of Samuel Avery House, and also assisted in the promotion of the ongoing work on the Pavilion.

41. Samuel Avery House authorized Patricia to act on its behalf in assisting in the design and monitoring of the renovation, including permitting access to the job site at times of her choosing.

42. Patricia consented to act in the capacity of an agent of Samuel Avery House in designing

|   |   |
|---|---|
|   | the renovation, monitoring its progress and periodically entering the job site. |
| 43. | Samuel Avery House remained the owner of the property and exercised ultimate control over Patricia's activities, but the discretion afforded to Patricia by Samuel Avery House was broad and allowed her to enter the job site as she wished.  The authority given Patricia by Samuel Avery House with respect to the renovation and access to the property was express, implied or both. |
| 44. | Elaine reasonably believed that Patricia had the authority to permit her entry to the job site and was doing so as agent of Samuel Avery House given her knowledge of Patricia's involvement in the project, her past experience with Peter and Patricia in the construction of the Inn, and Patricia's relationship as wife to Peter, the sole member of Samuel Avery House. |
| 45. | On August 9, 2020, Patricia offered Elaine the opportunity to view the ongoing renovation of the Pavilion.  In particular, Patricia asked Elaine if Elaine wanted to see beams which had been uncovered in the course of the renovation which were believed to be King's Wood. |
| 46. | The beams were in a section of the building which was to be the kitchen when the project was completed.  Prior to bringing Elaine to the Pavilion on August 9, 2020, Patricia did not conduct any inspection of the job site to determine if it was safe and free of unreasonable hazards. |
| 47. | When Elaine entered the kitchen area of the Pavilion, Patricia directed Elaine to look up to the ceiling of the room to observe the beams believed to be King's Wood were located.  While in the room and moving to see the beams, Elaine was looking up as directed.  While doing so, Elaine fell through an opening in the floor which was to be the stairway |

to the basement.

48. The opening was uncovered. The opening was not protected by any railings or guards to prevent a person from accidentally falling through it.

49. Elaine was injured when she fell though the opening in the floor to the concrete floor below.

50. Patricia, as the actual or apparent agent of Samuel Avery House, owed to Elaine a duty of reasonable care. This duty included, but was not limited to, the duty to reasonably inspect the areas of the Pavilion which she wished to show Elaine prior to Elaine entering the Pavilion, to keep Elaine from areas of the structure which were not safe and to warn of any hazards which were reasonably observable by Patricia. A reasonable inspection of the kitchen by Patricia prior to Elaine's entry to the kitchen would have revealed the opening in the floor.

51. Patricia knew that the stairs to the basement were to be located in that area. Patricia's failure to inspect the area led to Elaine entering the kitchen when there was no covering of the opening and at a time there were railings, coverings or warnings protecting a person from falling through the opening.

52. Patricia did not warn Elaine of the hazard or take any action to prevent Elaine from falling through the opening.

53. As a direct and proximate result of Patricia's breach of duties as alleged, for which Samuel Avery House is vicariously liable, Elaine fell through the unguarded opening sustaining the injuries and damages alleged.

## COUNT V

### (Negligence - Patricia Cooke)

54. Each and every factual allegation in paragraphs 1 - 53 above is restated as if alleged herein.

55. In addition to acting as the actual or apparent agent of Samuel Avery House as alleged in Count IV above, Patricia owed Elaine the same duties alleged above individually and regardless of whether she was acting as the agent of Samuel Avery House. Patricia, acting individually, breached those duties as alleged in Count IV proximately causing Elaine's injuries and damages as alleged. Patricia is individually liable to Elaine for all or a portion of her damages.

## COUNT VI

### (Loss of Consortium RSA 507:8-a - All Defendants)

56. Each and every factual allegation in paragraphs 1 - 55 above is restated as if alleged herein.

57. At all times relevant, Alfred was married to Elaine.

58. Each defendant breached duties owed to Elaine which were breached causing in whole or in part the injuries alleged by Elaine as alleged in Counts I - V above.

59. The injuries sustained by Elaine proximately caused Alfred the loss of his wife's service, companionship and consortium for which each defendant is legally responsible. Examples of this loss include, but are not limited to, those alleged in paragraph 61 below.

60. Elaine was hospitalized or admitted to in-patient rehabilitation for approximately one month after her fall.

61. After her discharge home, Elaine was unable to use the stairs to the second floor bedroom

she shared with Alfred, and was forced to sleep in a hospital bed set up on the first floor of her home. Elaine was unable to care for herself and Alfred assisted in almost every aspect of Elaine's daily care. Elaine was unable to drive for many months after the fall, and Alfred regularly drove her to her numerous doctor's and therapy appointments. Some of these appointments were at Dartmouth Hitchcock Hospital in Lebanon, New Hampshire requiring a round trip drive of multiple hours from the Chamberlain home in Groton, Massachusetts. Alfred also assumed many of the household duties previously performed by Elaine. Elaine's injuries and limitations are permanent in whole or in part and Alfred's loss of his wife's consortium will continue in the future and is likewise permanent in whole or in part.

## Jury Trial

62. **Plaintiffs demand a trial by jury**.

WHEREFORE, the plaintiffs respectfully request this Court:

A. Enter judgment for plaintiffs in an amount determined in a trial of this matter, plus applicable costs and interest;

B. Grant such other and further relief as the Court finds is just and equitable.

                                    Elaine and Alfred Chamberlain

                                    By their Attorneys

                                    Bussiere & Bussiere, P.A.

June 30, 2022                       /s/ John P. Fagan
Date                                       John P. Fagan, Esquire (#6828)
                                           15 North Street
                                           Manchester, NH 03104
                                           603-622-1002
                                           john@bussierelaw.com